UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 23-cr-00202-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TIMOTHY O KIMMONS (01) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Timothy O. Kimmons ("Defendant") is charged with one count of possession with intent to distribute methamphetamine. The charges arises out of a traffic stop. Following the stop, officers performed a pat-down of Defendant and found methamphetamine in his pocket. Before the court is Defendant's Motion to Suppress (Doc. 18). Defendant argues that the pat down was not supported by reasonable suspicion that Defendant was dangerous. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. Testimony at the hearing, along with body camera footage of the traffic stop, established the following facts.[1] In September of 2022, Trooper McCormick of the DEA Task Force notified Trooper Clemmie Porter that Defendant was in a vehicle transporting a large amount of narcotics from south Louisiana. McCormick Gave Porter the license plate number, location, and description of the vehicle.

---

[1] Trooper Porter's patrol vehicle was out of commission at the time of the incident, so he was driving a car that was not equipped with a dash camera. Accordingly, there is no dash cam footage of the traffic stop. Tr. 10.

McCormick told Porter that Defendant was a violent offender and was possibly armed. He had a history of drug charges and resisting officers with force. Tr. 8-9.

At approximately 11:00 p.m., Porter located Defendant's vehicle driving eastbound on I-20 in Webster Parish. Tr. 9. He saw the vehicle swerve and the rear tire of the vehicle crossed the white fog line. He initiated a traffic stop for improper lane usage. Tr. 10-11.

Defendant and Porter pulled to the side of the road. Porter called Defendant to step out of his vehicle and walk to rear of the patrol car. He saw that Defendant was looking around, twisting his hands, and appeared nervous. There was an unidentified passenger in Defendant's vehicle. Tr. 11-12.

Porter asked Defendant for his license and registration. Defendant responded that he did not have his license with him and that his registration was in the glove compartment. He told Porter that his brother was in the front passenger seat. Porter told Defendant to get the registration. Porter walked with Defendant and stood next to him as he retrieved the registration. Porter asked Defendant whether he had any weapons, and Defendant said that he did not. Defendant pulled out his cell phone and stated he wanted to call his girlfriend. Porter told Defendant not to make a call. Tr. 13-14.

Defendant and Porter walked back to the rear of Defendant's vehicle. Porter began asking Defendant questions. He asked where Defendant was going, and Defendant said he was going home from Shreveport. Tr. 15.

Porter asked Defendant whether there was anything illegal in the vehicle. Defendant responded that there was not and said that Porter could check inside the vehicle. Tr. 16.

Sgt. Paul Harris arrived at the scene, and Porter left Defendant to talk to Harris. Defendant pulled out his phone and began making a phone call. Tr. 16. Porter asked him to put the phone down and said he did not want him to call anyone. He asked again if Defendant agreed to a search of the vehicle, and Defendant said yes. Porter then asked Defendant to put his hands on the patrol car and performed a pat-down of Defendant. Tr. 18. He felt a solid object in his pocket. He handcuffed Defendant and read him his <u>Miranda</u> rights. Tr. 18-19. He then asked Defendant what was in his pocket, and Defendant said it was methamphetamine. Tr. 20.

**The Motion to Suppress**

Defendant concedes in his motion that Trooper Porter likely had reasonable suspicion that a traffic violation occurred. Indeed, Trooper Porter testified that he saw Defendant's vehicle cross the white fog line in violation of La. R.S. 32:79. Thus, Trooper Porter conducted a lawful investigatory stop. Defendant also concedes that he gave consent to search the vehicle. Accordingly, the sole issue is whether Trooper Porter had reasonable suspicion to believe that Defendant was armed and dangerous to justify a pat-down.

**Analysis**

To justify a pat-down of the driver during a traffic stop, the police "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." <u>Arizona v. Johnson</u>, 129 S.Ct. 781, 784 (2009). The officer "need not be certain that an individual is armed" to perform the search. <u>United States v. Tuggle</u>, 284 Fed. Appx. 218, 223 (5th Cir. 2008). Instead, "the issue is whether a reasonably prudent man could believe, based on 'specific and articulable facts,' that his safety or that of others is in danger." <u>Id</u>.

Under the "collective knowledge" doctrine, Trooper Porter could rely on the information from DEA agents that Defendant was possibly involved in narcotics trafficking. Under the collective knowledge doctrine, an officer initiating a stop or conducting a search need not have personal knowledge of the evidence that gave rise to the reasonable suspicion, so long as he is acting at the request of those who have the necessary information. U.S. v. McPherson, 630 Fed. Appx. 330, 331 (5th Cir. 2016), citing United States v. Ibarra–Sanchez, 199 F.3d 753, 759 (5th Cir. 1999). The collective knowledge theory applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. United States v. Ibarra, 493 F.3d 526, 530 (5th Cir.2007).

The court finds that, under the circumstances, Trooper Porter had reasonable suspicion to conduct the pat down search of Defendant. The traffic stop occurred at night, and visibility was reduced. Based on the collective knowledge of the DEA task force agents, Porter knew that Defendant was believed to be transporting a large amount of narcotics and that Defendant was a violent offender and had a history of resisting with force. Tr. 8-9. Porter knew based on his experience that people who carry large amounts of narcotics also usually carry guns or other weapons. Tr. 7. Further, while Trooper Porter performed the search, Sgt. Harris was going to be alone with Defendant and his brother, leaving Harris outnumbered while Porter's back was turned. Tr. 17. All of these circumstances, taken together, reasonably led Trooper Porter to believe that his safety was in danger. Thus, the pat down search was supported by reasonable suspicion.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 18) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of February, 2024.



Mark L. Hornsby
U.S. Magistrate Judge